Mr. Fry May it please the Court, Theodore H. Frank of the non-profit Competitive Enterprise Institute for Appellant John Berlau. They call it the merger tax. Over 97% of mergers face lawsuits that threaten injunctions delaying the shareholder vote and the vast majority settle for attorney's fees, nothing for the shareholders and immaterial supplemental disclosures. On January 22nd of this year, Delaware said enough is enough and in the Trulia case 12983-884 they said we're not going to stand for these sort of disclosure only settlements that impose costs upon shareholders for the benefit of lawyers. We're not going to stand for them unless the release is narrow and unless the disclosures are plainly material and by plainly material we mean it's not a close call, that it's not a close call. Excuse me counsel, in this case there was a narrow release correct? There was a narrow release. It's a two part test. They met one of those parts. They didn't meet the other. And it's your position they didn't meet the materiality question? I think that there's no question they didn't meet the materiality. Is it your position they didn't meet the materiality because it's just your position that they didn't because the district court judge appeared to have done a fairly extensive assessment of the materiality of each disclosure during the course of the fairness hearing when I reviewed the transcript. She went through each disclosure in the context of the circumstances of the transactions involved and to actually determine whether or not such a disclosure had any materiality to the shareholders under the circumstances and she examined each one. You may have disagreed with her conclusions and obviously you did because you're here but can you fairly say that the district judge erred and didn't conduct an appropriate assessment to determine materiality? Yes, I think I can because I think every one of those materiality assessments is legally erroneous. But in addition to that, we're asking for a different legal standard than what the district court applied. We're asking for the truly a standard. Asking for what I'm saying? The truly a standard from Delaware. Oh, I see. Yeah. The plainly material standard. And if we go through each one of those, the things that the district court thought were material just simply weren't. Take for example the argument that it was material because shareholders were entitled to the precise post-merger shareholdings of Pacina and the other investors. Isn't that something that would be important for those shareholders to know to vote on the transaction that was before them? Isn't that in fact material to know that post-merger, if you vote for this transaction, you need to understand that these people that have this interest, this is what's going to happen to their holdings. It's going to be increased by almost double their percentage. As a shareholder who's voting on these transactions, how can you say that that's not material or better yet that the district court's finding that it was material was clear legal error? Well, first of all, the supplemental disclosure did not disclose the precise holdings. It disclosed an estimate that was contingent upon multiple factors. And that's at A72 and it says it's contingent upon this factor and this factor and this factor. For example, if Walgreens issued more shares, which they had the right to do in order to pay for the remaining Boots stock, the denominator would change. If the share price changed, they would have to provide more shares to the investors. And that would change the- If what changes? They'll have to provide more shares? If the underlying Walgreens share price changed- Oh, the price. Yeah. That would change the shares issued to the investors. And Walgreens itself at the fairness hearing, and that's at appendix 337, said these are not precise numbers. So even to the extent that these might be material, it wasn't provided in the supplemental disclosure at 72. What was provided was simply a calculation of the estimate, the same calculation that any shareholder could provide by doing arithmetic on what was already disclosed in the original proxy statement. At A462 to 63, it discusses, here's our estimates of what these shareholders will receive as a percentage of the 144 million new Walgreens shares. And at A564 and several other places in the proxy, it discloses the amount of shares outstanding. It's just simple arithmetic. And doing that arithmetic is, as a matter of law, not material. Even if the estimate was material and the estimate, as a matter of law, under Wheelgose is not material. There is no obligation to disclose it. And there is nothing in the proxy hiding this fact. Counsel, what is the test that you are, as you indicated, you admit, what you're asking us to do is to adopt a new test for these type of cases. What is the test that you are suggesting? It would be the Trulia test, 129A, third at 898. What is that test? That the supplemental disclosures are, in a disclosure only settlement, are plainly Give me something other than it's not a close call, because the district court judge here felt like this wasn't a close call. No, the district court never made that finding, and in fact, it's the opposite of the finding that the district court made. Excuse me, counsel. Can I finish my question? Sure. So, if you're advocating for a new test that you believe clearly will allow an assessment of materiality, a concrete assessment, as opposed to the judge's discretion here, which you clearly disagree with, give me that test. So how do we determine if something, according to you, is clearly material and not a close call? Well, when the district court says, well, maybe this is material and maybe it's not material, oh, okay, I think it's material, which is what happened here. That is not what happened here. That's what she said at the beginning before she heard arguments and heard the evidence. Afterwards, she came back and issued her ruling and stated the basis upon which she felt that each, actually five of the disclosures were material, and she, in fact, ruled that one was not. So your characterization of what happened here is actually not accurate. We disagree on that, but this circuit has said... And I'm really asking you for, if you're advocating for a test, a clear, bright line test, I'd like to hear it. I'd like to hear the test that you're advocating that would allow a determination by a district judge on materiality under these circumstances that you feel was not done here by this district court or is something that we should adopt now under Rule 23. So take me through that test. Well, in Appert, in this circuit, in 673 F3-609, this circuit said that things can be immaterial as a matter of law, and every single thing here, for the reasons we discussed in our opening and reply briefs, was immaterial as a matter of law. The only thing disclosed by the supplemental disclosure for the percentages was an arithmetic computation of an estimate, and that's doubly immaterial because, one, it's an estimate, and, two, it's arithmetic. Are you going to tell me about that test? I'm sorry? I'm still asking you what's the test that you're advocating. The test is when something is trivial, as every single one of these disclosures are, that it doesn't add anything to the shareholder information. We know that it doesn't add anything to the shareholder information because 97 percent of the shareholders who voted voted for the merger. That's a 42 to 1 ratio. Didn't the judge apply that test? The judge looked at the information and, obviously, she didn't conclude that the disclosures were trivial. She concluded that they were material. I think she applied the wrong materiality test. If you look... Well, what she said was, I've been persuaded that at least the following supplemental disclosures may have mattered. Yes, I think may have mattered is very short of the truly attested plainly material, and it's pretty clear that the judge didn't apply the truly attest because truly it came down January 22nd and the judge decided in November. If we don't apply the truly attest here, what's going to happen is all of these Delaware merger tax cases are just simply going to come to federal court, and we should have a uniformity of standard in judging these abusive settlements to prevent that sort of forum shopping. While we're talking about the practical consequences of the test that you're asking for, upending these settlements on the basis of a different standard of materiality means what as a practical matter, that they all have to be litigated before the merger can close? No, I think what happens is that the meritless ones like this one disappear and the meritorious ones happen the way... They don't just disappear on their own, they have to be litigated, right? That's why I'm asking about the practical consequences, it goes back, if the settlement is rejected, the case remains live and it has to be litigated at least on a 12B6 motion. Well here we're not just asking for a rejection of the settlement, but a rejection of 23A4, right to bring the lawsuit in the first place, as happened in the Crowley case, 687-F3314 and in Aquedot. That gets rid of the case entirely. In the alternative, you can make it a going forward rule to solve the dilemma that Walgreens faced here and say the settlement can be approved, but it was a nominal disclosure, you get nominal fees, here's your dollar. One of the things that the judge said right before what I read about may have mattered, she said, I would add that in the future, especially if there are issues like this, hearing from someone who's not a lawyer who would explain to me that it mattered would have been very, very helpful. And I question that too because you can always get an expert for hire to say, oh it was really important to me. Well the judge could appoint her own expert. Or the judge could appoint her own expert, but it's absurd to say that it was material to learn that the board considered factors when they appointed Pacina the acting CEO. The board considered factors? It doesn't tell you anything. The reason they say that that's material is they were worried that Pacina forced himself on the board as the acting CEO, but nothing in the supplemental disclosure tells you whether Pacina forced himself or didn't force himself. It just says we looked at his experience and considered other factors, and maybe one of those other factors was Pacina threatened to use his shares against us. We don't know. So we're talking just remarkably trivial disclosures there because they didn't think that anybody would object as happens in the vast majority of these settlements. They would just come through, they would collect their 1.25 times their load star for their 100 hours of work for two weeks of litigation in an unlitigated case. The academic literature recognizes what's going on here. This court recognizes what's going on in any of these settlements. Previously complained about it in Felsen v. Andreas, and I asked the court to apply the same rules that it applied in Crowley, in Pearson, in Aquedots, and say this sort of abusive settlement can't happen, and this sort of abusive lawsuit can't happen. Okay, thank you, Mr. Frank. Mr. Teicholm? Yes, sir. Good morning. May it please the court, David Teicholm on behalf of the Plaintiffs Appellees. In their briefing, and here again in argument, the CCAF has not disguised this agenda, and that is to ask this court to adopt a new rule of settlement approval, and to do so in order to strike back- What was the Delaware rule? Correct, a Delaware rule. So how is the, so the $370,000 fee, that's just based on number of hours plus a billing rate, is that it? Not exactly, Your Honor. The $370,000 was, and this is a critical point, was arrived at through arm's length adversarial zero-sum negotiations- Ah, no, forget that. What is the basis of the $370,000? The three, there were $300,000 worth of Lodestar billables, and then there's a 1.25- Wait, you're losing me. I don't know what- Hours- That first- Hours times hourly rate gets you to $300,000. That's the $300,000? Correct. And what's the $70,000? Well, that is the multiplier. So you have a multiple- A multiplier? Yes. What is that? Under the law of the circuit, in certain situations, a multiplier is appropriately applied to the to arrive at a more proper figure. One of the circumstances in which a multiplier is appropriate is when a case is litigated on a contingent basis. This case was litigated on a contingent basis- It wasn't really litigated, though. Well, Your Honor, we disagree with that, clearly. Two weeks. It was two weeks, that's correct. But the key here is the value of the disclosures, and we submit that there is- Well, do you accept Mr. Frank's suggestion that the Delaware test is the proper one to use? It's interesting because, respectfully, Mr. Frank- Well, yes or no? No. Why not? Mr. Frank has misstated that test. Look, Delaware knows more about this stuff than we do. Yes, Your Honor, but he's not stating the correct test. Trulia did not hold that if you do not have plainly material disclosures, you cannot approve a settlement. That is not the holding of Trulia. What Trulia said is whether you do not have plainly material disclosures, it, quote, may be appropriate, end quote, for the court to enlist third-party assistance to help it analyze the value of those disclosures. Trulia also explains when and why doing so would be appropriate. Well, Judge Gottschall also suggested third-party. But Your Honor, she had third-party. She had better than third-party objective neutral assistance. She had the CCAF, whose existential purpose is to object to settlements, and they filed a 25-page brief, they appeared at the settlement hearing, and they specifically addressed these particular disclosures. So she had that precise adversarial proceeding that the court and Trulia- Then why did she- you say precise adversarial procedure? Then why did she complain that she really would have liked a non-lawyer to explain things to her? I think she was speaking about a perfect world. And certainly- No, she didn't say in a perfect world. Well, Your Honor, you're right. She did say- She wanted a witness. She didn't want advocacy. That's correct. But there's a difference. It is. And I think that's the material point of the inquiry here. That is missing. Lawyers came to court. There was a lot of talk, and she made a summary finding. And it was all sort of wrapped up nice and tidy in a bow, and all done in two weeks. And you collect your $370. So two points, if I may. First of all, the Trulia rule says you need an adversarial proceeding. It does not say you need plainly material disclosures. And Judge Gottschall had that adversarial proceeding. But she obviously was bothered by this. Someone who had explained to me that it mattered. Now, the implication, of course, is that no one explained to her why it mattered. And that's why in the next sentence she said, the following supplemental disclosures may have mattered. You're correct, Your Honor. But if you go to the next page of that decision, she also says, I believe that at least these disclosures would have been meaningful to investors. So was it an incredibly obvious call for her? No, it wasn't. But she exercised her discretion, and it is critically an abusive discretion standard here. And in exercising that discretion, she determined that at least four of those six disclosures were material. And if I could speak quickly on that standard review. What does it mean when she says, for example, that she thinks there were at least some meaningful disclosures for some investors? Well, that doesn't mean 370,000. Maybe there are two investors who are grateful for this information. Your Honor, you're right that it is difficult to perfectly evaluate the precise value of these disclosures to the investors because you can't go to all of them. But there's a whole cloud that hangs over this entire class action business. Yes, Your Honor. We have had many cases where we've really described what's going on as a kind of racket. If I may, Your Honor, we address this at length in our papers, and we think it's critically important. Our case, our litigation, our settlement is meaningfully distinguishable from that specific category of merger litigation that has drawn criticism from the courts. Why is it worth 370,000? Well, you could ask that question to the defendants because in zero-sum negotiations, when the transactions were secure, when the settlement was intact, fees were completely separate from the question of the settlement in that posture when they had zero incentive to pay a penny more than necessary, as dictated by the quality of the disclosures and the case law, they agreed not to oppose the fee. They're trying to close the deal. No, the deal was closed at that point. When they entered into those negotiations, the deal had been closed for months, for months. Those negotiations began in May of 2015. The deal was voted on on December 29th of 2014, the prior year, and it was consummated December 31st. That is what's so critical. Those were zero-sum negotiations, so they had zero incentive. So who paid the 370,000? Well, the company, I don't know whether it's insurers, I don't know whether it's the company itself. Which company? Walgreens. Which is what, a billion-dollar company? Yes. So 370,000 is like a penny to one of us. Perhaps. No, not perhaps. 370,000 is nothing to a company like Walgreens. Agreed, Your Honor, but companies are not in the habit of wasting money either, and if they believe that these disclosures will only work… A company like Walgreens will pay 370,000 to kill a gnat. Yes, but, Your Honor, this is so critical. At the point at which they agreed to pay that money, the gnat was killed. The deal was consummated. They just wanted to go away. Right. But it was a way at that point. They knew when they settled for the additional disclosures that they were going to be on the hook for some degree of fees. That is correct. The objective in the later fee negotiation was to keep the lid on it, and they did that somewhat successfully. But why not then say these are meaningless disclosures, so we're not going to pay you anything more than $5, or these are somewhat valuable, so we'll pay you $100,000? There is zero reason for them to go to 370,000 unless they themselves recognize the value of these disclosures. Counsel, the work that was involved in the 370,000 that was calculated, it was based on the number of hours, correct? Yes, Your Honor. And a certain hourly rate. Yes, Your Honor. And then the load start. The work that was done that was represented in the hours, was the work only done during those two weeks in December, or wasn't there some additional work that was done after December that was included in those fees? The time requested only goes up to the filing of the preliminary approval papers. And also, it was a two-week litigation, but there was a lot of time. And when was that? I'm sorry. In July of 2015. Right. So there was work that went from December of 2014 through July of 2015? That's correct. There was confirmatory discovery. There was document production. Documents were reviewed. There was also an interview of a critical Walgreens employee who was very much involved in this transaction. And also, the active litigation lasted two weeks. However, there was work that went into this prior to the litigation. You have to investigate the case. You have to draft the pleadings. Also, you had multiple law firms which filed two different complaints and were ultimately coordinated. That's another reason why the hours wound up being higher than you might expect. If I could quickly address the standard of review here. There is no dispute that the standard is abuse of discretion. And under ISBV-BAE, under Wong v. Accretive, it is clear that this Court's role in that context is not to do a substantive analysis of the underlying merits, but to examine the general principles. That is the fairness, the reasonableness, and the adequacy. That is the give versus the get, whether there is misconduct or bad faith that you saw in Pearson, in Crowley, in Creative Montessori, for example. You have none of that bad faith. Well, we do have a question about the legal standard. Yes. Oh, I'm sorry. In what sense? The materiality legal standard. Yes. Which is not the deferential standard of review. There is a very narrow category of materiality, which is immateriality as a matter of law. It is very narrow. Everything else that is not immateriality as a matter of law is subject to the pure fact-finding abuse of discretion standard. There is no dispute that immateriality as a matter of law means that. What is an abuse of discretion standard? It is when the Court either commits an error of law or defies the plain evidence in front of them. Defies the evidence? Makes a decision inconsistent with the evidence that abuses their discretion. If I may, immateriality as a matter of law is defined as reasonable minds not being able to differ as to the materiality of that disclosure. Here, we have a district court, which we submit is the quintessence. The judge was obviously very uncomfortable. I believe the judge began uncomfortable, and over the course of the process. Over the course of two pages, she became comfortable? Well, I understand what Your Honor is saying. However, there was, as the judge pointed out, there was a process before that that has been multiple pages. Yeah, before. But in the end, she was very uncomfortable. But she was sufficiently comfortable based upon the preference of this circuit for negotiated arm's-length settlements to find that these disclosures were sufficiently material to confer a sufficient benefit to warrant approval of the settlement. See, I don't think arm's-length means anything. This money is so insignificant for Walgreen that they'll just pay it to make you go away. They're not interested in the merits or anything of that sort. Just a gnat. They want a gnat. They want to swat you. Can't swat you, so they give you $370,000. Your Honor, if I may. Is this what your firm does regularly, by the way? Is this your specialty? No, Your Honor, it is not. And again... Is it a class action firm? It is a class action firm, yes. And how big a role do these disclosure class actions play? We only file disclosure claims, disclosure cases, in accordance with what the Delaware Court... That is not my question. My question is how important to your practice are these disclosure suits? Not particularly important, Your Honor. But the disclosure cases that we file are significantly different from... What is the most significant disclosure, in your opinion, that you achieved with the settlement? I believe it's disclosure number three, which is the substantive discussions between JANA and Walgreen's management leading up to the Step 2 acquisition and also the entry into the nomination and support agreement with Rosenstein. And the CCF's argument here is... And those disclosures are valuable to whom? To the shareholders, Your Honor. And what would they do with the disclosure? With that information, they are able to know, with that particular disclosure, they are able to know that there are hedge fund investors within this company who had a very active role, who were agitating within the company for change, and who were involved in substantive discussions with Walgreen's management leading up to the entry into these transactions, and then subsequently the decision to put one of those hedge fund representatives on the board. And the CCF's argument here is the way that we, the CCF, interpret this disclosure is that these preliminary substantive discussions did not occur until after the decision... Because you have a hedge fund person on the board. And now what do I, as a shareholder, do with that information? When you make your decision of whether or not to vote in favor of this transaction, it is helpful to know that before the decision was made to enter into the transaction, that same hedge fund, which despite having less than 2% share ownership, was engaging in substantive discussions with Walgreen's management about the direction of the company. Hedge funds have different incentives than the average shareholder, and it is helpful to a shareholder to know that you had this different voice dictating, to a certain extent, the direction of the company towards these transactions. Well, how much stock did the hedge fund have? It had less than 2% of the holdings. Well, how could someone with less than 2% be dictating to the management? That is exactly the right question, and clearly they could dictate enough to be able to secure themselves board representation. I don't understand you. If you own only 2%, how can you dictate? If you have the ear of the decision makers. The ear of the decision makers? Yes, Your Honor. Why is the decision maker going to listen to a 2% investor? That is a good question, and they clearly did listen to the 2% investor because they put the 2% investor on the board. That is proof of the ability of that 2% investor to play a meaningful role within the company. So what is the shareholder supposed to do with that information? It is supposed to decide whether, having known that information, that there are different factors at play within the decision making within the company to enter into this transaction. Do they know who this hedge fund person is? The hedge fund is called JANA, yes, and then the lead representative of JANA in connection with these transactions was Barry Rosenstein. All that was disclosed in the original proxy. No, Your Honor. JANA had a seat on the board. That was disclosed, yes. What was not disclosed is that there were preliminary negotiations between JANA and Walgreens Management, during which JANA opined and weighed in on the prospects and the direction of the company, and that occurred before the decision to enter into the transaction. The CCF says otherwise, but if you read closely that disclosure, it makes clear that there were preliminary discussions between JANA and Walgreens Management in connection with, that's a quote, those discussions a confidentiality agreement was entered into, and this is the critical part, quote, thereafter there were further discussions in which JANA, there were further discussions between JANA and Walgreens Management. So you don't have further discussions without initial discussions. And I see my time is up, and I will. Okay. Well, thank you very much, Mr. Ketchum. Thank you. Mr. Dekay. Mr. Dekay. Good morning, and may it please the Court. I'll just be brief, Your Honor. I want to make a couple of points. The first is to the extent that the objector here is proposing a new rule as a policy matter that should apply to federal proxy fraud cases, we submit that that's not necessary. The district courts already have the flexibility and the tools available to them to address all of the issues that the objector has raised here. And, in fact, that's exactly what happened in this case. Well, do you have any objection to the plainly material standard that Mr. Frank suggested? Your Honor, I don't think it exactly maps on, and I think it's important to appreciate that what the Delaware courts were really dealing with in Trulia were cases in which there was a broad-based challenge to a merger that included not just disclosure issues but claims of breach of fiduciary duty. And what was happening is these cases were being brought, and then they were being settled solely for disclosure. But on the flip side, those disclosure settlements would result in a release of all kinds of claims. And so that gave rise to one of the vice chancellors referring to these as intergalactic releases. These are claims that would be inclusive of not just disclosures but breach of fiduciary duty, antitrust, and the like. And so what Trulia is really getting at is trying to establish a proportionality between the actual benefit that's provided to the class and the scope of the release that's given up by the class. And so in the federal proxy fraud context, what we have are not sort of general fiduciary duty claims. We have specific disclosure issues. And here what happened was we had a claim for a breach of the proxy laws with respect to specific disclosures. That were the allegations. What we provided in the settlement were some additional disclosures that were designed to meet the claims. Right, the context is different, but how does that difference in context affect the nature of the legal standard that applies to assessing materiality? Well, I think, Your Honor. I mean, it's all aimed at getting at what the benefit to the shareholders is. Indeed, Your Honor. And my point is simply that the district court has the ability to weigh the benefit. And that's exactly what she did here. And she went through and she was presented with all the issues. Right, but it's our obligation as a reviewing court to put some meat on the bones of the legal standard. Agreed. Rather than just leave them. Agreed, Your Honor. The judges to flail about in finding a way to decide these cases. Yes. On something impressionistic. So do you have a fundamental objection to the plainly material standard? Using it in this context? In this context. This is a subset of the larger context. It is and it isn't. Because, again, I think the scope of the release here is really quite important. And that's what was driving the plainly material issue. Sure, sure. So I think the point I'm making, Your Honor, is simply that the court already has provided guidance. There must be a benefit. That's what Crowley and Aqueducts stand for. And that's exactly what the district court did in reviewing and considering all of the issues that were raised by the district court. No, that's not accurate. When she says disclosures may have mattered to a reasonable investor, that's not the Delaware Post. No, but I'm suggesting, Your Honor, that it was enough to establish a benefit to the class. And that's what the court did. Was the settlement announced publicly? Yes, it was, Your Honor. What happened to Walgreen's stock when it was announced? Your Honor, I don't know the answer to that question. Isn't that significant? I don't think so, Your Honor. Why not? Because I think it would be very difficult to tease out the impact. No, it wouldn't. Pardon me? No, it wouldn't. Your Honor, I think— If there's one announcement involving Walgreen on one day, and the stock doesn't move, falls, rises, that's the sort of thing that people who study the markets regard as meaningful. I agree, Your Honor, but to do a— If the stock soared after the settlement, people might say it's great, you know. Walgreen's dodged a bullet and so forth. If it fell, people might say they're wasting their money, they're in the clutches of the class action lawyers. I'm just surprised that you don't know what happened to the stock. Your Honor, the settlement was— I will represent, I suspect that it did not move materially. But again, I don't think you can draw a conclusion from that, that the specific disclosures were themselves material. And again, I think the standard that was properly— Wouldn't it make sense for Judge Gottschall to have appointed a neutral expert under Federal Rule of Evidence 706 to advise her about the value of these disclosures? Because that's really—that's a financial or business issue. It's not a legal issue. Your Honor, I think she could have done that, and that's precisely my point. But she's obviously uncomfortable. And so, shouldn't we be saying to the judges, district judges, when you have a complex financial issue and if you don't feel comfortable with the issue and you're mistrustful of party experts, you should use your authority under Rule 706 and appoint a neutral? Yes, Your Honor. And again, my point is that that authority is already in the rules and can be exercised in appropriate circumstances. But I take it no one suggested it to her. Well, she, I think, you know, implied it herself. But the fact of the matter is she could have done that. The district courts have the tools available to deal with the issues that have been raised. So why didn't she do it, given that she was uncomfortable? Well, Your Honor, I think she got comfortable. And again, I think Your Honor's... No, she didn't get comfortable. Your Honor, she ended up concluding that these were, at least some of these disclosures... She ended up with what I said, with what I quoted from page 38. But with the benefit... May have mattered. Yes, Your Honor. And she felt that that was a sufficient benefit to... Well, she's using a very different test from the Delaware test. She is, Your Honor. The may have mattered test. May have mattered disclosure. Who knows? Could have mattered. Possible. Given the $370,000. Because it may have had an effect. Your Honor, I see I'm out of time, and I don't want to abuse my privilege up here. It's okay if you want to say something. Sure, I just want to make a point on the fees. And just to underscore something that the plaintiff's counsel said, he's right that the fee negotiation had nothing to do with the settlement of the underlying case. That happened much later, after the fact. And so to the extent that there's a suggestion in the papers that we were somehow over a barrel and needed to pay off the plaintiff's lawyers in order to get this deal done, that's just not accurate. Well, you knew when you negotiated the specific disclosures that there was going to be a fee award following on as a necessary course. Your Honor, there would be a fee request, but again, that's another tool available to the district court. So to the extent that the district court concludes this isn't really much of a benefit, it can vary the fee accordingly. The judge here could have awarded zero. That was certainly a possibility. Okay, well, thank you very much. Thank you. Mr. Frank, do you have anything further? Thank you, Your Honor. First of all, on the standard of review, this is an application of law to facts. That's de novo. Materiality is the application of law to facts. There's no dispute over the facts because we have what the proxy statement said. We have what the supplemental disclosure said. If the judge had made a factual finding that the former CFO had blown the whistle and was noisily resigning, we couldn't challenge that unless clearly erroneous. But there is no sort of factual finding like that. It was simply the application of law to facts. And if you look at what they say is their number one disclosure, on page 70 of the record, it's one paragraph. And if they had brought this lawsuit saying, you failed to disclose that when you appointed somebody to the board, they had discussions with you before that, in negotiating the nomination and support agreement where you all discussed what he wanted to do with the company when he was on the board. That's absurd. Any shareholder understands that already. Of course, JANA has influence. They got a nomination and support agreement that put them on the board. That was already disclosed in the proxy statement. Counsel, I have a quick question. If the district judge had made the same findings of materiality with respect to the disclosures, and if she had rejected the request for $370,000 in attorney's fees and instead awarded $50,000 in attorney's fees, would you have an objection? That is probably not something we would take up on appeal, depending on how she worded the wording. Would you be advocating for the Delaware test on materiality? Again, that came down in January, supporting what we were already arguing in the district court. I think you understand what I'm asking. If the fees were $50,000, would you be standing here today challenging the district judge's findings on materiality of the disclosures? If she had ruled $50,000, then she would have effectively adopted our preferred rule that nominal disclosures deserve nominal fees. Well, no, she would still have made the same finding that the disclosures were material. No, I'm asking specifically had she made the same findings of materiality with respect to the specific disclosures in this case, but had she then awarded $50,000 in attorney's fees versus $370,000, would you have the same objections? Would you be here today arguing for a change in the standard to be applied on materiality? We're a nonprofit with limited resources. When something like that is close enough for government work, we probably wouldn't be appealing. Thank you. Quickly, Trulia is not just about the release. We did accurately quote page 898 of that on the plainly material standard, and Walgreens themselves said that they were over a barrel in their brief, and that's why you should allow them to be blackmailed to pay off these sorts of settlements, unless there are further questions. Thank you, Your Honor. Thank you very much to all counsel. Next case, please.